UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| *IN RE: THOMAS DEGNAN* | | Bk. Case. No. 98-12011<br>Chapter 13 |
| NANCY WALKER | : | |
| | : | |
| vs. | : | A.P. No. 03-1072 |
| | : | |
| THOMAS DEGNAN and | : | |
| ST. ANNE'S CREDIT UNION | : | |
| OF FALL RIVER, MA. | : | |

FILED FEB 12 '07 11:55 USBCRI

**DESIGNATION OF RECORD ON APPEAL**

1. Jan 12, 2007, Docket Nos. 99 and 100, DECISION APPORTIONING OWNERSHIP INTERESTS, AND ORDER FOR PARTITION AND SALE OF PROPERTY.

2. May 17, 2005 Docket No. 87, COMPLETE TRANSCRIPT OF TRIAL HELD AND CONTINUED.

DATED: February 10, 2007

Certificate of Service

I hereby certify that I mailed a copy of the above to the United State's Trustee's Office, 10 Dorrance Street, Providence, RI 02903; Colleen Brady, Esq., 167 Main Street, Tiverton, RI 02878; Barry J. Kusinitz, Esq., 155 South Main Street, Ste. 405, Providence, RI 02903; and Matthew J. McGowan, Esq., 321 South Main Street, Providence, RI 02903; by regular mail, postage prepaid, on this 10TH day of February, 2007.

NANCY WALKER
401-635-0078

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF RHODE ISLAND**
**380 Westminster Street, 6th Floor**
**Providence, RI 02903**
**www.rib.uscourts.gov**
**(401)626-3100**

In Re: **Thomas G. Degnan**
**Sakonnet Auctioneers and Appraisers**

Debtor(s)

BK No. **1:98-bk-12011**

Chapter **13**

AP No. **1:03-ap-01072**

**Nancy Walker** et al
Plaintiff(s)

v.

**Thomas Degnan** et al
Defendant(s)

Judge: **Arthur N. Votolato**

FILED FEB 12 '07 11:55 USBCRI

## JUDGMENT ORDER

Pursuant to the order entered this date, judgment is hereby entered regarding;

**(re: [99] Denying a Complaint/Alternate Relief granted. See order for details)**

Judgment #: 1:03–ap–01072 – 100 – 99

Susan M. Thurston
Clerk, US Bankruptcy Court

Dated: **1/12/07**
Document Number: **100 - 99**

By: **cs**
Deputy Clerk

judgmentap.jsp Form 406

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| In re: | : | |
| THOMAS G. DEGNAN<br>Debtor | : | BK No. 98-12011<br>Chapter 13 |
| | : | |
| NANCY WALKER<br>Plaintiff | : | |
| v. | | A.P. No. 03-1072 |
| | : | |
| THOMAS DEGNAN and<br>ST. ANNE'S CREDIT UNION OF FALL RIVER, MA<br>Defendants | : | |

**DECISION APPORTIONING OWNERSHIP INTERESTS, AND ORDER FOR PARTITION AND SALE OF PROPERTY**

APPEARANCES:

Matthew J. McGowan, Esq.
Attorney for Debtor/Defendant, Thomas G. Degnan
SALTER McGOWAN SYLVIA & LEONARD, INC.
321 South Main Street
Providence, Rhode Island 02903

Barry J. Kusinitz, Esq.
Attorney for Plaintiff
155 South Main Street, Suite 405
Providence, Rhode Island 02903

Colleen Brady, Esq.
Attorney for Defendant, St. Anne's Credit Union of Fall River, MA
THOMAS T. BRADY, INC.
167 Main Road
Tiverton, Rhode Island 02878

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

Heard on the Plaintiff Nancy Walker's Complaint against Thomas Degnan ("Degnan") and mortgagee St. Anne's Credit Union of Fall River, MA ("St. Anne's"),[1] alleging inter alia that Degnan holds real estate in Little Compton, Rhode Island (the "property"), as trustee, for her benefit.

## BACKGROUND

An understanding of the now defunct relationship of Walker and Degnan is helpful (and necessary) to resolve this dispute. In 1998, when the parties were involved both personally and in business, and because she was in financial trouble, Walker asked and Degnan agreed to purchase her house which was scheduled to be sold at foreclosure. Degnan also allegedly agreed to hold the legal title to the property for one year, or until Walker regained financial stability, and that he would reconvey the property at Walker's request. Walker complains that although she has asked Degnan to convey the property to her, he refuses to do so.

Degnan initially denied the existence of an agreement and filed a counterclaim against Walker seeking both legal and

---

[1] Although St. Anne's is a named defendant in this Adversary Proceeding, the trial proceeded essentially without its involvement, with the parties in agreement that the reason St. Anne's was named as a party, is the possibility of a dispute over the amount it is owed. The only relief requested thus far against St. Anne's is that it be required to produce an accounting, which we believe has been done.

equitable title to the property, or alternatively, a lien against the property for the value of his services and cash contributions, which he says had a lot to do with the increase in the market value of the property during the parties' odyssey of increasingly hard financial times and deteriorating personal and business relationships.

Although Walker and Degnan each allege having made significant cash contributions toward the debt service and maintenance of the property for the past nine years, neither has offered competent evidence to support her or his respective position. Basically this trial consisted of mostly talk, and little substance or proof. Because the parties have left the Court with a record that makes a resolution according to normal evidentiary standards impossible, but instead limits and requires the outcome to be based on the application of general equitable principles, I find for the reasons discussed below, that Walker and Degnan each own a 50% interest in the property, and order its partition and sale, with the net proceeds to be distributed equally between the parties.

## DISCUSSION

In 1985, Walker purchased land in Little Compton, Rhode Island, and built the residence which is the subject of this dispute. In 1993, Walker filed a Chapter 11 case that was later converted to Chapter 7, and she received a discharge in June 1995. Walker managed to hold onto her home during the bankruptcy, but not long thereafter the property was again facing foreclosure. In an effort to save the property, Walker concocted what she herself later described as a "hair brained scheme", and proposed to Degnan, her business[2] and social partner (who, at the time was able to qualify for financing), that he should purchase the property for her at the foreclosure. Degnan agreed, and in April 1996, was the successful bidder at the sale. According to Walker she provided Degnan with the required $30,000[3] deposit, and Degnan financed the balance of the purchase price with a $120,000 mortgage loan from St. Anne's Credit Union.

Walker asserts that their oral agreement also provided that after one year, and upon re-establishing her credit, she would obtain refinancing and relieve Degnan of his personal liability under the note and mortgage, whereupon he would reconvey the legal

---

[2] Degnan and Walker were 50/50 co-owners of Sakonnet Auctioneers and Appraisers ("SAA"), which they operated until October 1998.

[3] This sum is disputed. Degnan contends that of the $30,000, he received only $11,000 from Walker.

title to her. In the meantime, it was Walker's obligation to pay all expenses, including mortgage, insurance, taxes and maintenance. Initially, Degnan denied having agreed to reconvey the property to Walker, but at trial conceded that essentially he was acting as a straw, and that Walker would occupy the property and pay all of the expenses associated with owning it. His present position is that Walker has failed, all along, to meet her financial obligations regarding the property.

By May 1998, Degnan was himself in financial trouble, the mortgage was in default, and the future of the property was again in jeopardy. So on May 11, 1998, in order to stop a scheduled foreclosure, Degnan filed his own Chapter 13 case. At no time during the pendency of his case did Degnan disclose that Walker asserted a claim of ownership in the property. He did testify, however, in a deposition that prior to his bankruptcy he considered that the property belonged to Walker, but that after he had to file for bankruptcy he felt that whatever agreement they had was ended. On the date of Degnan's bankruptcy filing the St. Anne's mortgage was delinquent in the amount of $13,500. Neither the plan nor the confirmation order addressed an ownership dispute, and Walker raised no title issues until November 2003, when she filed the instant Complaint alleging that she is the owner of the property. Degnan completed his Chapter 13 plan and received a discharge on

March 15, 2006. Walker has occupied the property continuously, and presumably rent free.

Walker testified that prior to and during Degnan's bankruptcy, she repeatedly asked him to convey the property to her, but to no avail. She also suggests that Degnan's refusal to convey the property is an afterthought, prompted by the substantial increase in value of the property since it has been in his name.[4] Walker further contends that she kept her part of their agreement by reimbursing Degnan for the mortgage payments he made, and only seeks to have the property returned to her per the oral agreement.[5]

Conversely, Degnan vehemently denies that Walker performed as required, pointing to her repeated and continuous payment defaults, and the fact that he was forced to file for bankruptcy himself to rescue the property from foreclosure. Additionally, Degnan asks that he be declared the sole owner of the property because for nine years he has borne, and still has, the legal and financial responsibility for the property, including the ongoing mortgage payments, taxes, etc. Given the equity in the property

---

[4] The most recent appraisal shows the property to be worth approximately $540,000, versus $180,000 when Degnan purchased the property at foreclosure in 1996.

[5] Neither party has raised a statute of frauds issue, as constructive and resulting trusts arise by operation of law and are not covered by that doctrine. *See Matarese v. Calise*, 305 A.2d 112, 120 (R.I. 1973); *See also* R.I. Gen. Laws § 9-1-4 (1956).

(approximately $400k as of November 2005), this argument can hardly be expected to evoke empathy for Degnan.

**THE LEGAL ARGUMENTS**

*Resulting Trust:*

Walker's first argument is based on her claimed status as the beneficiary of a resulting trust. Resulting trusts may arise in one of two ways: (1) When purchase money is contributed by one party and the title is taken in the name of another; or (2) When an express trust fails in whole or in part.[6] *Restatement (Third) of Trusts §§ 7, 9 (2003); Fleet Nat'l Bank v. Valente (In re Valente)*, 360 F.3d 256 (1st Cir. 2004) (recognizing the validity of resulting trusts under Rhode Island law); *Carrozza v. Voccola*, 2006 WL 2405891 at *3 (R.I. Super. 2006), *citing Desnoyers v. Metropolitan Life Ins. Co.*, 272 A.2d 683, 689 (R.I. 1971); *Cetenich v. Fuvich*, 102 A. 817, 820-21 (R.I. D.1918) (acknowledging the existence of purchase money resulting trusts under Rhode Island law).

Whether a resulting trust has arisen is a matter of state law, *see Marquette Credit Union v. Taft (In re Dexter Buick-GMC Truck Co.)*, 2 B.R. 627, 629 (Bankr. D.R.I. 1980), and the burden of proof is on the claimant to prove its existence by clear and convincing evidence. *Cutroneo v. Cutroneo*, 98 A.2d 921, 923 (R.I. 1953); *Roseman v. Sutter*, 735 F. Supp. 461, 464 (D.R.I. 1990).

[6] The law of express trusts is not relevant in this discussion.

Under Rhode Island law one element of the creation of a resulting trust is the source of the funds used to purchase the property, as well as the parties' intent to retain the beneficial ownership of the property. *Carrozza*, 2006 WL 2405891 at *3, *citing Cetenich*, 102 A. at 821. *Gooding v. Broadway Baptist Church*, 125 A. 211, 213 (R.I. 1924); *U.S. v. One Parcel of Real Property with Bldgs.*, 942 F.2d 74, 82 (1st Cir. 1991) (simply paying for *some portion* of the property does not establish a resulting trust; one must also show that at the time of the purchase the parties intended that a specific ownership interest would be acquired); *Roseman*, 735 F. Supp. at 464; *Campanella v. Campanella* 68 A.2d 85, 88(R.I. 1949). A general contribution towards the entire purchase price, without the intent to create a specific ownership interest in the property will not create a resulting trust. *Gooding*, 125 A. at R.I. at 213; *Cutroneo*, 98 A.2d at 923.

With that as background, Walker has the burden of proving by clear and convincing evidence that: (1) At the time of the April 1996 foreclosure sale, it was the intention and understanding of the parties that although Degnan took the legal title, Walker retained the beneficial interest in the property; (2) that Walker contributed substantially all of the $30,000 deposit; and (3) said payment was more than a general contribution towards the total purchase price. It is now undisputed that it was Walker's idea to

have Degnan purchase the property at the foreclosure sale, and Degnan now concedes that he understood that Walker was to retain the beneficial ownership interest in the property. But Degnan's present position is that Walker's chronic failure to relieve him of responsibility for the note and mortgage, and for failing to pay the upkeep and expenses over a nine year period, negate her claim to any interest in the property.

Based upon the evidence, as discussed below, there was an agreement that Degnan would buy and hold the property for Walker's benefit and that Walker would pay the costs of ownership. So on that issue, Walker passes the initial hurdle for establishing a resulting trust.

Regarding the $30,000 Walker allegedly gave Degnan for the down payment, it is not possible to determine, even approximately, the amount paid by Walker.[7] Even if fully persuaded by Walker's testimony, I could find that, at best, she contributed $22,500 of the $30,000 deposit. Degnan, however, contends that most of the deposit money came from Sakonnet Auctioneers and Appraisers ("SAA"), the business jointly owned and operated by these parties, and because of his fifty percent interest in "SAA", he should be credited for at least half of the deposit money paid by "SAA". Not

[7] The conflicting evidence varies anywhere between $11,000 to $22,500.

a bad argument, but not addressed at the hearing, and again there is no evidence of what was paid by "SAA", or what understanding there was as to said payments.

In the end, neither Walker nor Degnan have offered evidence sufficient to identify the source(s) of the $30,000. Therefore, the most that can be said is that Walker made an undetermined general payment towards the entire sum, and that between the two of them Degnan and Walker came up with sufficient funds to purchase the property at foreclosure. *Campanella*, 68 A.2d at 88 (court held that a resulting trust did not arise where the court could not determine the source of the funds used to purchase the property). Here, for the same reason, Walker has failed to establish the existence of a purchase money resulting trust, and her request for relief on that ground is DENIED.

*Constructive Trust:*

Alternatively, Walker argues that Degnan holds the property as a constructive trustee for her benefit. A constructive trust arises where one person holds title to property subject to an equitable duty to convey it to another, if the title holder would be unjustly enriched if he or she were permitted to retain the legal title to property. *Desnoyers*, 272 A.2d at 690. Necessary for the creation of a constructive trust are: (1) the existence of a fiduciary or confidential relationship; and (2) the breach of a

promise or an act involving fraud that occurred as a result of the confidential relationship. *Dellagrotta v. Dellagrotta*, 873 A.2d 101, 111 (R.I. 2005); *Clark v. Bowler*, 623 A.2d 27, 29 (R.I. 1993); *Connor v. Sullivan*, 826 A.2d 953, 960 (R.I. 2003). As with resulting trusts, the claimant has the burden of proof by clear and convincing evidence. *Id.*

On the fiduciary or confidential relationship issue, Walker's several witnesses corroborated her assertion that Degnan purchased the property at her request and for her benefit. While there are no hard rules to determine whether a confidential relationship exists, some guidance is available by considering a variety of factors, "including the reliance of one party upon the other, the relationship of the parties prior to the incidents complained of, the relative business capacities, or lack thereof, of each of the parties, and the readiness of one party to follow the other's guidance in complicated transactions." *Simpson v. Dailey*, 496 A.2d 126, 129 (R.I. 1985); *A. Teixeira & Co., Inc. v. Teixeira*, 699 A.2d 1383, 1387 (R.I. 1997) (the term "fiduciary is a broad concept that might be correctly described as anyone in whom another rightfully reposes trust and confidence.")

Although it is not evident when their relationship began or ended, the Court is satisfied, based upon their business and social connections (and the circumstances which resulted in the present

state of the title to the property), that a confidential relationship existed between Walker and Degnan when the property was purchased at foreclosure by Degnan in 1996.

Given the existence of such a relationship, Walker must also prove either a fraudulent act, or breach of a promise in order to establish a constructive trust. "For fraud to lead to the creation of a constructive trust, the evidence must show that the holder of [the] legal title procured [the] title through fraud." *J.K. Social Club v. J.K. Realty Corp.*, 448 A.2d 130, 134 (R.I. 1982). "With respect to real property there must be some element of fraudulent conduct by the person in possession of the property in procuring the conveyance in order for a constructive trust to arise." *Curato v. Brian*, 715 A.2d 631, 634 (R.I. 1998). There is no evidence in this case to even suggest that Degnan acquired the property through fraud. To the contrary, title to the property ended up with Degnan at Walker's request.

That leaves the question whether there was a breach of promise to reconvey the property. Walker contends, frivolously, that she made monthly mortgage payments of $1,000 to St. Anne's from April 1996 thru November 2002 (but this obviously cannot include the mortgage arrearage due at the time of Degnan's bankruptcy). That assertion is also contradicted by documentary evidence that St.

Anne's was paid $14,369 during 1996[8] and 1997 by Sakonnet Auctioneers and Appraisers – while Walker and Degnan each owned fifty percent of the business. Because "SAA" funds were commingled, and with no evidentiary support, it is not possible to credit Walker with 100% of those payments. In 1998 and 1999, St. Anne's reports it was paid $12,482, with each party disputing the amount paid by the other during the period. Adding further confusion to the process of sorting out numbers, both Walker and Degnan admit they "can only account for $2,080 apiece during this time period [1998-1999] in their respective compilations, leaving $8,332 unallocated." Plaintiff's Post-Trial Memorandum, Doc. No. 94, p. 12.

In 2000, St. Anne's received $14,019 - and Degnan concedes that $6,050 was paid by Walker; however, $1,500 of the $14,019 is unaccounted for by either party. Similarly in 2001, St. Anne's received $16,661 - $1,050 of which was paid by Walker; and again, $3,436 of the $16,661 is not accounted for by either party.

The payments made to St. Anne's during 2002 and 2003 were in excess of $35,000, and are all attributable to payments through

[8] The figures for 1996 through 2004 were provided by St. Anne's, as payments received and credited towards the mortgage. Degnan contends that the numbers are inaccurate because St. Anne's calculated the payments for calendar years 1996 to 2000 differently from the payments it received in calendar years 2001 to 2004, resulting in an error of $7,885 – whatever that means.

Degnan's Chapter 13 plan. Walker contends that during this period she made cash payments to Degnan *or gave him merchandise*[9] *in exchange for* mortgage payments made by him. The amount Walker contributed during this period is left wide open, and she has not shown with any specificity what was paid to Degnan. Finally, in 2004 and 2005, St. Anne's was paid $4,672, an amount that Degnan claims he paid, and which Walker does not dispute.

Degnan urges this Court to accept his "calculations" which show that he has contributed $76,997, and that Walker paid $39,340 from 1997 to 2004. According to Walker, she paid $47,165 and Degnan paid $68,376 for the same period. Payments of $13,008 cannot be logically allocated to either party. Evidence at this level of disarray would be hard to imagine, but it is what it is.

Based upon the entire record, one finding that can be easily and safely made is that subsequent to her own bankruptcy, Walker never achieved the financial ability to reimburse Degnan for his contributions, or to remove his name from the note and mortgage. It is also clear that, viewing everything most favorable to her, Walker did not fulfill her obligation to pay all of the mortgage and other expenses associated with the ownership of the property. Additionally, I am not satisfied that Degnan breached his promise

[9] This contention introduces unsubstantiated allegations of bartering, which makes matters even more subjective, and less ascertainable.

to reconvey, i.e., he was never in a tenable position to give the title back to Walker, because of his continuing liability on the note and mortgage. Essentially, by her continuous defaults, Walker forced Degnan to keep the property in his name, and left him no choice other than to continue making payments to the best of his ability. The clearest fact in this case is that neither party had the ability to save the property from foreclosure without the help of the other, and that under all of the circumstances, a constructive trust in favor of Walker was not created.

*Equitable Liens & Equitable Relief:*

Both parties also claim equitable liens against the property, and while Walker admits owing Degnan *"some money"* for his contributions, and concedes that Degnan may pursue what he is owed under an equitable lien theory, she provides this Court with no clue as to what that amount might be.

An equitable lien is a mechanism used to enforce an informal claim or right to property. *Darr v. Muratore,* 143 B.R. 973, 976 (D.R.I. 1992). Specifically, an equitable lien may serve to reimburse a party for contributions made toward the improvement, maintenance, and preservation of a property, *East Providence Const. Co. v. Simon,* 172 A. 251 (R.I. 1934), and in its application the court may order the sale of the property to balance the positions of the parties. *Amaral v. Beig,* 1992 WL 813572 (R.I. Super. Ct.

June 17, 1992). Where an equitable lien has been established, a determination needs to be made regarding the value contributed by the party seeking the lien. *See id* at *4 (court ordered partition of the property after determining the actual amounts contributed by all parties). Here, however, for reasons previously complained of by the Court, i.e., the absence of adequate proof by either side to support their respective positions, the actual contributions of the parties is unascertainable. As further example, in her Post-Trial Memorandum Walker agrees to pay Degnan for his contributions. However, she also says: "This comes to anywhere from $33,989.00 to $81,384.00, depending on how one counts." Plaintiff's Post-Trial Memorandum, Doc. No. 94, p. 16. Even worse, this does not include the mysterious $13,008 which neither party is able to identify. *Id.*

Similarly, Degnan's analysis presents a confusing array of possible results, including the assertion that St. Anne's calculations are flawed, resulting in $7,885 which neither party can reconcile. Defendant's Post-Trial Reply Memorandum, Doc. No. 95, p. 5. As to this, Degnan argues that any monies left as "unallocated" by Walker should not affect his contributions, but rather, the Court should apportion these sums between the parties on a pro-rata basis, depending on their "known contributions."[10]

[10] In this case, a more classic oxymoron would be hard to imagine.

*Id.* By any standard, this entire business relationship and the trial as well, have been models in how not to do things, and, if given a choice, not one this Court would follow. But we will do what we can with what we have. Having said that, a basic issue that needs to be addressed, and one that will not go away, is the principle that damages "must be proven with a reasonable degree of certainty, and must establish reasonably precise figures and cannot rely upon speculation." *Nat'l Chain Co. v. Campbell*, 487 A.2d 132, 135 (R.I. 1985); *see also Kelley v. Medeiros (In re Kelley)*, 131 B.R. 532 (Bankr. D.R.I. 1991); *Alterio v. Biltmore Constr. Corp.*, 377 A.2d 237, 240-241 (R.I. 1977) (award of damages must rest on legally competent evidence establishing the nature and extent thereof, and may not be the result of conjecture). The burden is on the party seeking recovery, and it is not for the courts to speculate. *Id.* at 241. These rulings come from actions at law for damages, and hopefully do not control in cases such as this one, which by its nature requires equitable treatment, if the dispute is ever to be resolved. Based on the evidence, an attempt to quantify, with any certainty, the relative interests of the parties would be pure speculation. In fact, both parties admit significant discrepancies as to their respective positions, causing their own calculations to produce varying and speculative results.

Consequently, both Walker and Degnan's requests to impose equitable liens are DENIED.

*General Equitable Relief*

The trial and the record in this case are more reminiscent of an irreconcilable family court dispute than a bankruptcy matter, and the parties seemed more interested in taking personal jabs at each other, than providing the Court with the goods to determine their respective interests. Given the failure of proof by both parties on the central issue in this case, i.e., who contributed what to preserve and maintain the property, the Court is left with no conventional alternatives, but in the end it is clear that this property would be long gone and in the hands of a third party were it not for the combined efforts of Walker and Degnan to preserve it. Originally, this was Walker's property and when facing foreclosure she developed a strategy to save it, and Degnan went along. Unfortunately, Walker's plan did not materialize because she was never financially able to relieve Degnan of the responsibility for the property. Rather than abandoning ship, Degnan picked up the slack and made substantial payments to St. Anne's, and others, and when the property was facing foreclosure again in 1998, Degnan himself filed for bankruptcy, prevented its sale to a stranger, and preserved the equity which has become the real subject of this litigation. While neither party will ever

admit to it, this was genuine, albeit unintended, teamwork to achieve a common goal. Therefore, based on the totality of the circumstances, and for want of a mathematically correct way to solve the puzzle, this Court concludes that each party has a 50% interest in the property. But for the substantial increase in the value of the subject property, which is solely the result of upward movement in the real estate market, there would be nothing for the parties to argue over. While both parties played important roles in preventing two foreclosures, neither can claim credit for the substantial increase in the value of the property during the period in question. In the absence of any competent evidence upon which to resolve this dispute, allowing the parties to share the spoils appears to be an equitable, if not precise result.

To implement this ruling, partition of the property is required, and the parties are ORDERED to market and sell the property forthwith, *see 11 U.S.C. §105(a)*. To that end they shall select and hire within ten days, a mutually agreeable realtor to market the property, and if they cannot agree on a realtor, the Court will make the appointment on day eleven. From the sale proceeds, all secured debt, municipal charges, taxes, and customary closing costs shall be paid, and the net proceeds distributed equally between Degnan and Walker. For tax purposes, each party,

as a 50% owner of the property, shall be responsible accordingly for his or her respective tax liability resulting from the sale.

Enter judgment consistent with this decision.

Dated at Providence, Rhode Island, this 12th day of January, 2007.

Arthur N. Votolato
U.S. Bankruptcy Judge

Entered on docket: 1/12/2007